The first case is Bacal v. U.S. Bank. Good morning, Your Honors. May it please the Court, I am Deborah Gross of Kaufman, Korn, and Ress, representing the plaintiffs' appellants, Alexander Bacal, Sandra, and David Vischer, and ESM Fund, certificate holders, who brought this action against U.S. Bank, the trustee of the MARM 2006-082 Trust. As this Court is familiar with litigation arising from residential mortgage-backed security trusts, I will focus my argument on the uniqueness of the case at hand. This case is unique in that disputes relating to this trust first arose in 2010, leading to an interpleader lawsuit by the trust administrator, which in 2012 this Court ultimately passed judgment on, affirming the lower court's decision. In the interim, the certificate insurer sent notices of breach of the representations and warranties made about the mortgage loans in the trust, and demanded repurchase to the transferor and sponsor, and to the trustee, by virtue of the PSA-203, which says, upon discovery of breach by certificate insurer, it shall give prompt notice to other parties. And subsequently, because of no response by the sponsor and transferor, nor the trustee, the certificate insurer filed a lawsuit against UBS in February 2012. Finally, in September 2012, the trustee did file a lawsuit against UBS, alleging breaches of representations and warranties. That lawsuit resulted in a bench trial in the district court before the same judge handling the case at hand. Moreover, the court in that litigation, the trustee litigation, did not yet attempt to calculate the damages suffered by the trust, but referred the matter to a special master. Rather than assessing plaintiff's pleading using the well-established standards on a motion to dismiss, the district court relied on its knowledge and factual findings from the trial and the trustee litigation to dismiss the second amended complaint. By considering information beyond the SAC and beyond those matters which the district court could properly take judicial notice, the district court erred. At this procedural posture of the case, the court is evaluating the sufficiency of the pleadings, not the ultimate proof to be proved. Let me understand, as I understand the case, neither party is disputing that U.S. Bank at some point learned that UBS had materially breached its representation and warranties and it acted to enforce those obligations by bringing the suit that you've just talked to us about. That was in September 2012. So your claim is essentially that UBS Bank waited too long. Am I right about that? U.S. Bank waited too long. Sorry, yes, U.S. Bank. Sorry, I don't mean to correct you. That's what you're supposed to do. And the issue is that it's not only waited too long, but that hasn't been resolved. He's making findings based on what he thinks will happen. The judge, for example, made a determination that there may not have been a statute of limitations because the judge relied on Nomura, which has subsequently been, I will say, challenged by the court, the New York Court of Appeals, so that it's not findings of fact that this court, in our case, should rely on. And similar cases have held that, Pacific Life and Phoenix Light. So recently, you know, in Phoenix Light, the court held that the court couldn't gauge the success or failure of the trustee's efforts, whether its claims were timely and whether the claims in the state court litigation satisfied its duty to enforce repurchase litigations. So, you know, the big concern here is that the court took more than the face value of the complaint, more than the fact that the complaint was filed, and used the findings before him in the bench trial to make a decision in this matter. But it's certainly entitled to look at when the complaint was filed and to assess the period in which you say it should have had notice of the breaches when you say the complaint should have been filed and assess how you allege you were damaged by that delay. Sure. Absolutely. So how were you damaged by that period of delay? How does the complaint allege damage? As far as damages, the complaint doesn't have to, under New York law, which we are following the complaint for breach of contract claim, the complaint doesn't have to allege damage. But we have the complaint. We know that there was an action taken to enforce the representations, and that you say that there was a failure by not bringing that action earlier. One of the matters pled in the complaint, I believe at paragraph 61, is that the trustee in its litigation did not seek out files from IndyMac, which was one of the originators. So the trustee gave up all rights to suing breaches and representations concerning those IndyMac loans. That's one of the examples of the damages. And those damages have not been calculated because they were not even submitted to the special master. With respect to the fact that we believe that the SEC does, the SEC, the SAC, the complaint pleads an event of default occurred. Particularly, I'm going to focus my arguments, given my limited time, on the master servicer's failure to observe or perform. That's 7.01 ii. And it alleges that the master servicer failed to allege or perform by directing and permitting the erroneous release of funds by the trust administrator in violation of PSA waterfall payments. The court focused on the fact that the trustee didn't have any responsibility for the distribution of the monies. However, the trustee, not the trustee, the master servicer, pardon me, but the master servicer did have response. Correct me if I'm misremembering the record, but the point was that Wells Fargo was acting in its capacity as trust administrator and not master servicer. In distribution. However, Wells Fargo, as the master servicer, had to compile the information, present the information two days before to the certificate holder, to the trust administrator, and dictate how the money should be distributed. And then the master servicer actually dictated how those monies should be distributed, and that was in violation of the waterfall. And that's an inference that could be drawn because the trust administrator would not stray from what the directions were given to them by the master servicer. And the violation, the event of default, is defined as the master servicer's failure to observe or perform. So the plaintiffs are arguing that the master servicer failed to observe or perform in that respect. Good morning, and may it please the Court. Michael Kraut of Morgan, Lewis & Bockius for U.S. Bank National Association. We know this Court is well aware that investors have brought numerous cases against trustees in recent years trying to recoup losses on mortgage-backed securities. And we agree with my colleague that this case is unique. In fact, as Judge Costell recognized, this case is different from the others in which investors are suing trustees because in those cases the investors... I'm sorry, because in this case the trustee took the step that the investors in those cases say the trustee should have taken, and that's to file a lawsuit to enforce rep and warranty violations. For that reason, Judge Costell correctly dismissed plaintiff's complaint after affording them three tries to plead a claim. We believe this Court should affirm Judge Costell's decision for three primary reasons. First, plaintiff's theories largely hinge on the occurrence of an event of termination, and as Judge Costell correctly concluded, no event of termination is alleged here. Second, plaintiff's theory that the trustee failed to enforce rep and warranty breaches is not viable because the trustee did enforce breaches. Third, the trustee had no duty to investigate in search of any additional potential breaches. That would be the IndyMac point that Ms. Gross was raising. There's also an independent basis for affirmance, and that's that plaintiff's claims are barred by the no-action clause in the governing agreements. I'm happy to address that as well. But for the first point, Your Honors, the plaintiffs assume the occurrence of an event of termination that never occurred. Plaintiffs, in their complaint, focus on their dispute with Assured, the insurer for the trust, for the certificates, and as to how Wells Fargo allocated the money. And as Your Honor mentioned a moment ago, Judge Costell correctly recognized the difference between Wells Fargo acting in its capacity as trust administrator versus as master servicer, and not surprisingly, given the name master servicer event of termination, only the conduct of the master servicer can ever lead to an event of termination. Plaintiffs have argued today, as they did in their briefs, but they did not plead anywhere in the complaint that the master servicer must have instructed the trust administrator to make a payment, so there must have been some master servicer breach. Well, appellate courts obviously can't infer breaches that weren't pled to make the argument work. Moreover, even if the court would infer that there was a master servicer breach, that's not the same thing under the contract as an event of termination. An event of termination under the type discussed today, 701 Roman 2, can only occur if a series of specific steps occur. First, there must be written notice of the breach to the master servicer by one of specified parties. Number two, there must be a 60-day cure period during which the master servicer does not cure. And the complaint doesn't allege that proper notice was given to the master servicer that some instruction it gave to the trust administrator was a breach. But even if we assume... And the notice is given by either the trustee or 25% of the certificate holders. Am I right about that? That's correct. Not by one investor. But even if we assume for a second that notice of a breach had been given, that's still not notice of an event of termination. They're very different, and the first department in the Commerce Bank v. Bank of New York case emphasized that distinction. And that distinction's important because under the governing agreements, the trustee may conclusively assume that no event of termination has occurred unless it receives actual knowledge or has written notice of it. In the briefs, the plaintiffs argue that the notice need not be given under something called the prevention doctrine. As Judge Costell recognized, plaintiffs can't rely on the prevention doctrine for three reasons. Number one, the trustee had no contractual duty to give that notice. Two, the trustee can have no implied duties under the contracts. And three, the trustee didn't engage in any active conduct that prevented the notice from being given. We cited the fixed income case from the first department in our brief on that point. We think that's sufficient to make that point, but last month, the first department reaffirmed that principle in a case called BlackRock 2018, Westlaw 504-6640. We'll rest on our brief on the other arguments as to why a master service or event of termination wasn't sufficiently pled. They weren't raised this morning. So I'll move on to our second point, which is that the plaintiffs don't plead adequately that the trustee breached the governing agreements by failing to enforce UBS's repurchase obligation. As Judge Costell recognized, and as was discussed this morning already, the trustee filed a repurchase action against UBS and pursued those claims through trial. And that's why the Rule 12 motion decisions cited in the appellate brief about what happened in other cases really are an opposite here, because in those cases, a key issue was whether the trustee had discovered breaches. Here it's not disputed. The insurer for the deal assured, notified the trustee of breaches, and directed the trustee to sue, which it did. So unlike those cases, discovery is not an issue. On appeal, plaintiffs now say their claim is really, or one of their arguments is that the trustee pursued relief untimely. But they can't point to anything in the governing agreements that says when the lawsuit must have occurred. They have no basis for saying the claims were untimely, because they weren't untimely. And also, as Your Honor's question pointed out, that plaintiffs have been unable to identify any damages that they've incurred based on the timing of the lawsuit. In the brief, they say they need discovery to figure that out, but they're not entitled to discovery to see whether they have a claim. And the last point that plaintiffs make on this point is that Judge Costell improperly relied on his knowledge of the repurchase case, but plaintiffs pled very specific details about the repurchase case in a dozen different places in paragraphs in the complaint. They specifically quote from that opinion. They incorporate it by reference in their decision. They acknowledge in their appellate brief that, quote, the existence of the lawsuit was taken into account throughout the second amended complaint. So they're really in no position to argue that the judge looked at the decision. But importantly, the judge didn't rely on any unique knowledge he had of the case. The existence of the case, the procedural history, all of that is judicially noticeable. And when we argued this down below, it was not challenged. And so we don't believe that's an argument available on appeal. So the third point, Your Honors, is that apart from the breaches that the trustee pursued, the trustee had no duty to investigate any other breaches. The governing agreement's very clear on this point, that absent an event of termination, the trustee's duties are limited to those expressly set forth in the contract and that no duties or covenants can be implied against the trustee. As Judge Castell correctly found, no event of termination was pled. So that provision alone, 801 Roman 1, should be sufficient for the trustee to prevail here. But the contract goes beyond that, leaves no room for doubt, because not only is there no express duty to investigate in the agreement, the agreement actually specifically expressly says that the trustee has no duty to investigate unless directed to do so by certificate holders holding 25% of the voting rights of each class of certificates. And it's not alleged that that happened. So what the trustee would have found had it done some investigation is academic. That's not a duty the trustee has. But I'll finish just by pointing out that we believe that the court need not even reach the merits of this dispute  We're not asking this court to overrule its prior decision in Cruden. We don't think there's an inconsistency between what we're arguing and Cruden. Cruden simply doesn't apply here. In Cruden, the court said that no action clauses can't require investors to demand that a party sue itself. The clause at issue in the Cruden case provided that the trustee was the only party upon whom demand could be made. This case involves different contracts... I'm sorry, a different contract, different facts, and different claims. The contract here permits investors to make demand on either of two parties. They can make it on the trust administrator or the trustee. And as multiple courts have recognized, asking Wells Fargo to sue U.S. Bank would not be absurd even if the investor alleges wrongdoing by Wells Fargo. That comes up in the Commerce Bank case, the Sterling case, and the important distinction between asking a party to sue itself versus suing another party was recognized by Judge Sullivan in the Ellington case as well. So it's not just that the contracts are different, but the facts and the claims are different here. Plaintiff's primary theory here is that UBS, the seller, breached reps and warranties and that the trustee should have pursued claims against UBS. There's absolutely nothing absurd about investors demanding that Wells Fargo, as trust administrator, sue U.S. Bank for failing to sue UBS. So at a minimum, those claims should be subject to the no action clause. Your Honor, I'm going to conclude just by resting on our briefs on the remaining claims, mostly pled as tort claims, that are barred by the economic loss doctrine, duplicative of the contract claims, and rely on the occurrence of an event of termination that wasn't pled. Unless the court has any questions for me, thanks for your time. With respect to the defendant's claim about the no action clause, barring plaintiff's claims, the law is clear that the situation at hand is different from the cases that the defendants cite. So that the trustee... The no action clause says that you cannot sue the trustee or the trust administrator. The cases that have upheld or gone against... Actually, the cases that have gone against Cruden have been cases where the trustee hasn't been sued, where there is not an obligation or where there's not an obligation on the trustee to sue. One of the cases that's recently cited by the defendants, an auto opportunity, the no action clause barred a breach of contract claim against the securities administrator. These are different from the facts at hand. With respect to the Commerce Bank State case, which defendants rely on to show that there was no event of default, the facts there differ again from here. The notice that the trustee got was not specifically related to the trust in that matter. It was a letter from holders in other trusts which said that there was potentially an event of default, and that was rendered moot by a settlement. The case at hand, the letter from Assured... specifically said the loans which had breaches, specifically laid out the ways the loans were breached. Similarly, with respect to plaintiff's claim for breach of... Should the court find that there is no event of default, which we do believe there was, the court can still find that plaintiff's allegations regarding this duty of trust are sufficient. There are extra contractual duties for which plaintiffs are owed damages, and those duties lie in the trustees refraining from engaging in conflicts of interest. And recently, in Royal Park v. Deutsche Bank, the court recognized that a breach of duty of trust is a claim based on a failure to avoid conflicts of interest. The claims here do allege that the U.S. Bank has been complicit in a quid pro quo system. There are specific allegations in the complaint, similar to those alleged in BlackRock Allocation, that said that the trustee didn't want to sue itself, delayed in suing itself, because it had engaged in the same situation with respect to when it was a master servicer, when it was a trust administrator. So those claims are alleged here in our complaint. Thank you. Thank you both. We'll take the matter under advisement. Nicely done.